IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Wiley Y. Daniel

Civil Action No.  16-cv-02754-WYD-NYW

KIRSTIN KURLANDER,
on behalf of herself and others similarly situated,

Plaintiff,

v.

KROENKE ARENA COMPANY, LLC,

Defendant.

**ORDER GRANTING PLAINTIFF'S UNOPPOSED MOTION FOR
FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

**I.     BACKGROUND**

THIS MATTER is before the Court on Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement (ECF No. 66), filed on March 23, 2018. On April 5, 2018, the Court held a hearing on this motion and Plaintiff's Unopposed Motion for Attorneys' Fees and Costs (ECF No. 67).  For the reasons set forth below, I will grant Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement.

Plaintiff Kirstin Kurlander, a deaf woman, brought this class action case to address the lack of captioning at sporting events at the Pepsi Center, which is owned and operated by Defendant Kroenke Arena Company, LLC ("KAC"). Plaintiff alleged that KAC was in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181 et seq. ("Title III" or "ADA"). KAC denied such liability.

On August 31, 2017, this Court certified the following class pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2):

> All Pepsi Center patrons who are deaf or hard of hearing and unable to hear using assistive listening devices, who have been, since November 10, 2014, or in the future will be, denied full and equal enjoyment of the goods, services, facilities, advantages, or accommodations of the Pepsi Center based on Defendant's failure to provide open captioning of aural content during non-concert events for which the center-hung display is used.

Order on Class Certification (ECF No. 55) at 2, 17. The Court also appointed Plaintiff Kirstin Kurlander as the class representative and Amy Robertson of the Civil Rights Education and Enforcement Center as class counsel pursuant to Rule 23(g). *Id.* at 17.

On December 28, 2017, the parties reached a settlement in this matter, memorialized in a proposed Consent Decree, which this Court approved on a preliminary basis on January 9, 2018 (ECF No. 65).

## II.    FINDINGS OF FACT

In September, 2015 -- a bit more than a year before this lawsuit was filed -- Plaintiff sent Defendant a detailed letter describing Plaintiff's analysis of Title III's open captioning requirement applicable to arenas, such as the Pepsi Center. The parties discussed the possibility of resolution for over a year, but were unable to reach agreement. Plaintiff filed this lawsuit in November, 2016, and the parties focused on discovery and class certification. Following certification of the Class on August 31, 2017, ECF 55, the parties began to discuss different options for providing open captioning at the Pepsi Center. Counsel for Plaintiff and counsel for KAC attended a basketball game together in October, 2017, which started two months of negotiations, drafting, and site visits that resulted in the proposed Consent Decree.

2

The Consent Decree requires KAC to caption all aural content spoken over the public address system as well as the lyrics of songs selected at least 24 hours before the event for all non-concert events for which the center-hung display is used. Consent Decree ¶ III(A). It will provide this open captioning on four LED displays mounted on the fascia of the third level of the Pepsi Center starting with the first preseason Avalanche game of the 2018 season. *Id.* ¶ III(B). Each board will show two lines of captioning in a font that is at least 10 inches high, and each board will provide space for captioning that is at least 45 characters long. *Id.*

The Consent Decree requires KAC to provide information concerning captioning at various locations in the Pepsi Center and on relevant websites and publications of the Pepsi Center, and to retain a third party consultant to monitor the quality of captioning provided pursuant to the Consent Decree. *Id.* ¶ IV.

The Consent Decree provides that, subject to Court approval, KAC will pay Class Counsel's attorneys' fees and costs through final approval in an amount not to exceed $200,000, and will pay for work relating to monitoring in an amount not to exceed $75,000. *Id.* ¶ IX.

The Consent Decree does not provide for an award of damages to Plaintiff or to the Class and the Class does not release any claims for damages. In accordance with the only remedies available under Title III, the claims released by the Class are limited to claims for injunctive relief and associated attorneys' fees and costs. *Id.* ¶ XII.

The parties provided notice to the Class as specified in the Consent Decree and ordered by this Court. No objections were filed before or after the deadline.

## III. CONCLUSIONS OF LAW

"The settlement of a class action may be approved where the Court finds that the settlement is fair, reasonable, and adequate." *Colo. Cross-Disability Coal. v. Abercrombie & Fitch Co.*, No. 09-CV-02757-WYD-KMT, 2015 WL 5695890, at *3 (D. Colo. Sept. 29, 2015) (quoting *Tuten v. United Airlines, Inc.*, 41 F. Supp. 3d 1003, 1007 (D. Colo. 2014) (citing *Rutter & Wilbanks Corp. v. Shell Oil*, 314 F.3d 1180, 1186 (10th Cir. 2002))); *see also* Fed. R. Civ. P. 23(e)(2) (same).

> The Court reviews a proposed class action settlement by considering four factors: (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable.

*Abercrombie*, 2015 WL 5695890, at *3 (citing *Gottlieb v. Wiles*, 11 F.3d 1004, 1014 (10th Cir. 1993)). The proposed Consent Decree meets each of these four prongs.

The settlement negotiations in this case have been fair, honest, and at arm's length, and there are numerous indicia of this fact. Plaintiff attempted to resolve the issues around captioning at the Pepsi Center over a year before filing suit. The parties then spent a year discussing possible resolution, but were unable to reach agreement. After filing the Complaint, Plaintiff continued her investigation, took discovery from Defendant concerning its communications options and technical capabilities, and investigated captioning in arenas around the country. Once the parties decided to attempt to resolve this matter, they met and exchanged drafts over the course of two months, each side zealously advocating its respective position. This supports the

4

fairness of the Consent Decree. *See, e.g., Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 366 (S.D.N.Y. 2002) (finding that the negotiations leading to a class action settlement had been at arm's length in part because they had occurred over several months and had involved several in-person meetings).

Because the settlement resulted from arm's-length negotiations between experienced counsel after significant discovery had occurred, the settlement should be presumed to be fair and adequate. *See, e.g., Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (holding that a "'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'" (quoting *Manual for Complex Litigation* (Third) § 30.42 (1995))).

Although it is not appropriate at this stage of the litigation to evaluate the merits, *see, e.g., Shaw v. Interthinx, Inc.*, No. 13-CV-01229-REB-NYW, 2015 WL 1867861, at *2 (D. Colo. Apr. 22, 2015), there are several potential issues that could significantly impact this case if it were litigated. In addition, if this case were to be fully litigated, it would likely be many years before it would be resolved. Even if Plaintiff were to have prevailed, Defendant could have appealed that result, and it could have been many years before open captioning was provided at the Pepsi Center.

Finally, Class Counsel -- an attorney with extensive experience in class actions under Title III and other civil rights statutes -- represents to the Court that she believes the settlement is fair, reasonable, and adequate. "When a settlement is reached by experienced counsel after negotiations in an adversarial setting, there is an initial

5

presumption that the settlement is fair and reasonable. Counsels' judgment as to the fairness of the agreement is entitled to considerable weight." *Marcus v. Kan. Dep't of Revenue*, 209 F. Supp. 2d 1179, 1182 (D. Kan. 2002) (internal citations omitted).

**IV. CONCLUSION**

For the reasons set forth above, it is hereby

ORDERED that Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement (ECF No. 66) is **GRANTED.** Further it is

ORDERED and ADJUDGED that judgment is entered along with and in accordance with the Consent Decree signed by the Court on April 12, 2018, which is incorporated herein by reference, and the settlement reflected therein is given final approval. This Court retains jurisdiction over this matter for the purposes of interpreting and enforcing the Consent Decree.

Dated: April 13, 2018.

BY THE COURT:


s/ Wiley Y. Daniel
WILEY Y. DANIEL
SENIOR UNITED STATES DISTRICT JUDGE